2010 UT 68

**Chad HUDGENS, Plaintiff and Appellant,**

v.

**PROSPER, INC., and Joshua Christopherson, Defendants and Appellees.**

**No. 20090391.**

Supreme Court of Utah.

Nov. 23, 2010.

---

**17.** *See, e.g.,* Utah R. Prof'l Conduct 1.3 ("A lawyer shall act with reasonable diligence and promptness in representing a client.").

Sean N. Egan, Salt Lake City, for plaintiff.

Evan A. Schmutz, Andy V. Wright, Provo, for defendants.

DURRANT, Associate Chief Justice:

## INTRODUCTION

¶ 1 This appeal arises from the district court's dismissal of claims made by Chad

Hudgens against Prosper, Inc., and Joshua Christopherson (collectively, "Prosper") for injuries related to the alleged waterboarding of Mr. Hudgens by Mr. Christopherson. Prosper filed a motion to dismiss Mr. Hudgens's complaint, which the district court granted. Before the order dismissing Mr. Hudgens's claims was entered, however, Mr. Hudgens filed a motion for leave to amend his complaint. The district court denied Mr. Hudgens leave to amend and dismissed his claims with prejudice. Mr. Hudgens asks that we review (1) whether the district court erred when it dismissed his substantive claims and (2) whether the district court abused its discretion when it refused to grant Mr. Hudgens leave to amend his complaint. We conclude that the district court abused its discretion when it denied Mr. Hudgens's motion for leave to amend because the district court's order denying leave to amend failed to provide adequate reasons for the denial. Because we find that the district court abused its discretion in denying Mr. Hudgens leave to amend, we decline to review Mr. Hudgens's substantive claims and the dismissal of those claims by the district court. Accordingly, we reverse and remand for further proceedings.

## BACKGROUND

¶ 2 Because this is an appeal from dismissal under Utah Rule of Civil Procedure 12(b)(6), we must accept all of Mr. Hudgens's factual allegations as true.[1] The facts in this section are set forth in accordance with this standard.

¶ 3 This case arises from an incident that occurred on May 29, 2007. At that time, Mr. Hudgens was an employee of Prosper under the direct supervision of Mr. Christopherson. During the ten months that Mr. Hudgens worked for Prosper, Mr. Christopherson had engaged in numerous questionable management practices. Specifically, when an employee did not meet performance goals, Mr. Christopherson would draw a mustache on the employee using permanent marker or he would remove the employee's chair. Additionally, he would patrol the employees' work area with a wooden paddle, which he would use to strike desks and tabletops. Prosper was aware of Mr. Christopherson's actions and encouraged his behavior because it led to increased revenue.

¶ 4 On May 29, 2007, Mr. Christopherson asked for volunteers for a new motivational exercise. He offered no explanation to his team members regarding the nature of the exercise. In his search for volunteers, Mr. Christopherson challenged the loyalty and determination of his team members. Mr. Hudgens volunteered to be a part of the exercise to prove his loyalty and determination. Mr. Christopherson then led his team members to the top of a hill near Prosper's office. Once on the hill, Mr. Christopherson ordered Mr. Hudgens to lie down, facing up, with his head pointed downhill. Mr. Christopherson ordered other team members to hold Mr. Hudgens down by his arms and legs. Mr. Christopherson then slowly poured water from a gallon jug over Mr. Hudgens's mouth and nose so that he could not breathe.[2] Mr. Hudgens struggled and tried to escape but, at Mr. Christopherson's direction, the other team members held him down. After concluding the exercise, Mr. Christopherson instructed his team members that they should work as hard at making sales as Mr. Hudgens had worked at trying to breathe.

¶ 5 Mr. Hudgens reported the incident to Prosper's human resources department. Prosper took no action in response to the incident prior to the time that Mr. Hudgens quit working for Prosper. Mr. Hudgens quit working because the waterboarding incident caused him to suffer sleeplessness, anxiety, depression, and to feel sick to his stomach at work. Because of the distress caused by the incident, Mr. Hudgens has undergone psychological counseling and has suffered physical and emotional harm.

---

1. See *Berneau v. Martino*, 2009 UT 87, ¶ 3, 223 P.3d 1128.

2. This practice is commonly known as "waterboarding."

¶ 6 Approximately seven months after the incident, on January 15, 2008, Mr. Hudgens filed a complaint against Prosper and Mr. Christopherson asserting four causes of action. First, Mr. Hudgens alleged common law assault and battery against Prosper and Mr. Christopherson. Second, Mr. Hudgens alleged intentional infliction of emotional distress against Prosper and Mr. Christopherson. Third, Mr. Hudgens alleged Prosper and Mr. Christopherson had wrongfully terminated him from his position. Finally, Mr. Hudgens alleged that Mr. Christopherson had intentionally interfered with his contractual relationship with Prosper.[3]

¶ 7 Prosper filed a motion to dismiss the complaint and argued that Mr. Hudgens had failed to allege sufficient facts to demonstrate any claim for relief. Prosper argued that the claims of common law assault, battery, and intentional infliction of emotional distress were barred by the exclusivity provision of the Utah Workers Compensation Act. Specifically, Prosper argued that although there is an exception to the exclusivity provision for certain intentional acts, Mr. Hudgens's claim failed to fit into the exception because his complaint did not allege the necessary mental state. As to the claim of wrongful termination, Prosper argued that under Utah's at-will employment doctrine, Mr. Hudgens failed to state a claim for wrongful termination. Specifically, Prosper acknowledges a public policy exception to the at-will employment doctrine, but contends that Mr. Hudgens's claim does not fit into the public policy exception because Mr. Hudgens failed to identify a public policy on which he relied and failed to establish facts necessary to support his claim.

¶ 8 Mr. Hudgens responded to Prosper's motion to dismiss by arguing that, because his complaint alleged and specifically identified Mr. Christopherson's actions as intentional, the complaint satisfied the relevant standard for stating a claim. Mr. Hudgens also identified a number of statutory and common law public policies that supported his claim for wrongful discharge. Finally, Mr. Hudgens, in his memorandum opposing the motion to dismiss, sought leave to amend his original complaint. He argued that if the allegations in the original complaint were deemed insufficient, then he should be entitled to an opportunity to cure those defects. Mr. Hudgens sought leave to amend only in that memorandum; he did not, at that time, file a separate motion for leave to amend.

¶ 9 In a ruling issued on July 23, 2008, the district court dismissed Mr. Hudgens's complaint without prejudice. The court concluded that Mr. Hudgens's complaint failed to state a claim for common law assault, battery, or intentional infliction of emotional distress because the purpose of Mr. Christopherson's exercise was to motivate his team members, not to injure Mr. Hudgens. The court also concluded that Mr. Hudgens's complaint failed to state a claim for wrongful termination because it failed to adequately allege the violation of a public policy. The district court also denied Mr. Hudgens leave to amend his complaint, holding that Mr. Hudgens had failed to properly move the court for leave to amend because, rather than filing a motion for leave to amend, Mr. Hudgens incorporated his request for leave to amend into his Memorandum in Opposition to Prosper's Motion to Dismiss. The court indicated that the claims were to be dismissed without prejudice and instructed Prosper to draft an order reflecting its ruling. Prosper delivered that order to Mr. Hudgens on September 17, 2008, and the court signed it on October 8, 2008.

¶ 10 Between the delivery of the draft order to Mr. Hudgens's attorney and the signing of the order by the district court judge, Mr. Hudgens filed a motion for leave to amend his complaint. Mr. Hudgens's motion identified the liberal standard for granting leave to amend and highlighted the fact that Prosper would not be prejudiced if leave were granted because the litigation was in a relatively early stage. Included with the motion for leave to amend was Mr. Hudgens's

---

3. In conjunction with Prosper's motion to dismiss, the parties agreed to the dismissal of this claim. It is not a part of any of Mr. Hudgens's claims on appeal.

proposed amended complaint. The amended complaint included additional facts and allegations intended to cure the original complaint's deficiencies as identified by the district court.

¶ 11 In spite of this motion to amend, the district court signed Prosper's proposed order dismissing Hudgens's claims without prejudice. Even though it had successfully obtained the dismissal of Hudgens's claims, Prosper moved the court to amend the order so that the claims would be dismissed with prejudice. In seeking dismissal of the claims with prejudice and arguing against Hudgens's motion to amend, Prosper argued that leave should be denied because the facts in the amended complaint were inconsistent with the facts as set forth in the original complaint, and that the original complaint could not be superseded unless these factual discrepancies were adequately explained. Prosper also argued that the amendment was futile because even if the court were to grant leave to amend and accept the new complaint, the complaint would still fail to state legally sufficient claims for assault, battery, intentional infliction of emotional distress, and wrongful termination.

¶ 12 The court denied Mr. Hudgens's motion for leave to amend and granted Prosper's motion to amend the court's prior order to dismiss all of Mr. Hudgens's claims with prejudice. Although the district court directed Prosper to draft the amended order, Prosper failed to do so. Presented with this delay, Mr. Hudgens's counsel drafted a proposed order and presented it to the court. The relevant portion of this order states as follows:

> Having considered the submissions of the parties, having heard oral argument from counsel and for good cause otherwise appearing, it is hereby ordered as follows: 1.

Plaintiff's Motion for Leave to File an Amended Complaint is denied; and 2. Defendant's Motion to Dismiss all Claims with Prejudice is granted.

In addition to being presented to the district court, this proposed order was delivered to Prosper's counsel on February 26, 2009. The order was signed by the district court judge on March 27, 2009.

¶ 13 On direct appeal, Mr. Hudgens asks this court to reverse the district court's order denying leave to amend. He also argues that the district court erred in dismissing his original complaint and asks that this court consider the legal sufficiency of the original complaint. Because we conclude that Mr. Hudgens should have been permitted to amend his complaint, we do not examine whether the district court also erred in concluding that the original complaint failed to state a claim upon which relief could be granted. We have jurisdiction pursuant to section 78A–3–102(3)(j) of the Utah Code.

## STANDARD OF REVIEW

¶ 14 We review the grant of a motion to dismiss for correctness, granting no deference to the decision of the district court.[4] A motion to dismiss should be granted only if, "assuming the truth of the allegations in the complaint and drawing all reasonable inferences therefrom in the light most favorable to the plaintiff, it is clear that the plaintiff is not entitled to relief."[5] We will affirm the dismissal of a complaint " 'only where it clearly appears that the plaintiff . . . would not be entitled to relief under the facts alleged or under any state of facts they could prove to support their claim.' "[6]

¶ 15 We review a district court's denial of leave to amend for an abuse of discretion.[7] Under the Utah Rules of Civil

---

**4.** See Helf v. Chevron U.S.A., Inc., 2009 UT 11, ¶ 14, 203 P.3d 962.

**5.** Brown v. Div. of Water Rights, 2010 UT 14, ¶ 10, 228 P.3d 747.

**6.** Franco v. Church of Jesus Christ of Latter-day Saints, 2001 UT 25, ¶ 10, 21 P.3d 198 (quoting Prows v. State, 822 P.2d 764, 766 (Utah 1991)).

**7.** See Norman v. Arnold, 2002 UT 81, ¶ 38, 57 P.3d 997.

Procedure, this leave should be granted liberally.[8] But we have held that this liberality is limited, such as, for example, when it would result in prejudice to the opposing party, when leave to amend is sought during or after trial instead of before trial, or if the amendments would be futile.[9]

## ANALYSIS

¶ 16 The parties in this case disagree as to whether the district court's denial of Mr. Hudgens's motion for leave to amend was an abuse of the court's discretion. Among other things, Mr. Hudgens argues that the district court failed to adequately justify its reasons for denying his motion for leave to amend. He contends that the district court's failure to provide adequate reasoning to justify its denial was a per se abuse of discretion.

¶ 17 Prosper sets forth essentially the same arguments it presented to the district court—that the amended complaint is factually inconsistent with the prior complaint, and that, even if these inconsistencies are not, standing alone, a sufficient reason for denying leave to amend, leave to amend should also be denied because the amended complaint still fails to state any claim upon which relief may be granted.

I. THE DISTRICT COURT ABUSED ITS DISCRETION WHEN IT DENIED MR. HUDGENS LEAVE TO AMEND HIS COMPLAINT BECAUSE THE COURT FAILED TO SET FORTH ANY REASONS FOR THE DENIAL

■■ ¶ 18 Rule 15(a) of the Utah Rules of Civil Procedure sets forth the standard for granting leave to amend a complaint. It states that "leave shall be freely given when justice so requires." Underlying rule 15(a) is the "court's ultimate goal [of having] the 'real controversy between the parties presented, their rights determined, and the cause decided.' " [10] But the liberal standard underlying rule 15(a) is not without boundaries. Where an amended complaint is sought "as the result of a dilatory motive, bad faith, or unreasonable neglect," a district court has discretion to deny leave to amend.[11] Because a district court is "best positioned to evaluate the motion to amend in the context of the scope and duration of the lawsuit," we will reverse denial of leave to amend only if the district court abused its discretion.[12]

■ ¶ 19 But to guarantee that the purposes underlying rule 15 are served, such deference is not appropriate where the district court's order denying leave to amend does not permit meaningful appellate review.[13] When a district court denies leave to amend without adequately explaining its reasons for doing so, this court has no way of knowing whether the district court properly balanced the purposes underlying rule 15's liberality with competing, but nevertheless legitimate, reasons for denying leave to amend.[14] Accordingly, we will treat a district court's order as an abuse of discretion when the district court fails to articulate its reasoning for denying leave to amend, unless the court's reasoning is apparent from the

---

8. See Utah R. Civ. P. 15(a) ("[L]eave shall be freely given when justice so requires.").

9. See Norman, 2002 UT 81, ¶ 39, 57 P.3d 997; Aurora Credit Servs., Inc. v. Liberty West Dev., Inc., 970 P.2d 1273, 1282 (Utah 1998); Bekins Bar V Ranch v. Huth, 664 P.2d 455, 464 (Utah 1983).

10. Savage v. Utah Youth Vill., 2004 UT 102, ¶ 9, 104 P.3d 1242 (quoting Johnson v. Brinkerhoff, 89 Utah 530, 57 P.2d 1132, 1136 (1936)).

11. Swan Creek Vill. Homeowners Ass'n v. Warne, 2006 UT 22, ¶ 20, 134 P.3d 1122.

12. Id. ¶ 18 (internal quotation marks omitted).

13. See Aurora Credit Servs., Inc. v. Liberty W. Dev., Inc., 970 P.2d 1273, 1281–82 (Utah 1998).

14. See id. at 1282 ("Where no reason is assigned as grounds for the denial of a motion to amend a pleading, this Court has no guide whereby it can determine if a trial court has abused its discretion. This Court is then left in a dilemma wherein reversible error becomes a possibility if not a probability even though the trial court's reasoning might have been a proper exercise of its judicial discretion." (internal quotation marks omitted)).

record.[15] With regard to a similar rule adopted by federal courts, the Supreme Court has stated

the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the ... [r]ules.[16]

Thus, when a district court does not provide any reasons for denying leave to amend, the denial is a per se abuse of discretion.[17]

¶ 20 In this case, the district court's order denying Mr. Hudgens leave to amend contains virtually no reasoning. The only reasoning given in the order is that the district court denied leave based on the oral arguments, the briefs, and for good cause. This level of detail is simply insufficient to permit meaningful appellate review. In a prior case on this point, we acknowledged the possibility that the rule we apply here would not prevent review of the district court's judgment if the reasons supporting dismissal of the complaint were apparent from the record.[18] But there is no basis for upholding the district court's decision that is apparent on this record. As discussed, Mr. Hudgens's first attempt at obtaining leave to amend was unsuccessful because he failed to formally move the court for leave to amend.[19] The reasons that supported that decision no longer applied when the district court denied Mr. Hudgens leave to amend the second time. By the second time leave was denied, Mr. Hudgens had corrected his earlier mistake by correctly filing a formal motion for leave to amend.

¶ 21 Thus, the district court's earlier rationale simply no longer applied at the time it signed the order from which Mr. Hudgens appeals. Nor was it sufficient for the district court merely to cite the arguments set forth in the briefs and oral arguments as support for its decision. Like the reasoning set forth in the court's prior order, it is not clear that all of the arguments set forth in the parties' motions and at oral arguments would provide legitimate justification for the district court's decision. And without any indication in the court's order of the precise reasoning it adopted, we cannot meaningfully review whether that reasoning was correct.

¶ 22 The district court's failure to state reasons for denying Mr. Hudgens leave to amend requires both this court and the parties to speculate as to the district court's reasons for the denial. This makes it impossible for us to determine whether the district court properly complied with rule 15. In such circumstances, consistent with the liberal standard underlying rule 15(a), the district court's decision is deemed to be an abuse of discretion.

¶ 23 In the past, when this court has reversed a district court's denial of leave to amend for failure to adequately explain its reasoning, we have remanded the case to the district court with instructions to provide the omitted reasoning.[20] In this case, we find it appropriate to instruct the district court to grant Mr. Hudgens the leave he seeks and to proceed with the case based on Mr. Hudgens's amended complaint.

¶ 24 We adopt this course of action for two reasons. First, one consequence of the district court's failure to set forth its reasoning is that there is no indication that the district court found Mr. Hudgens's actions to be the "result of a dilatory motive,

---

15. *Id.* at 1281.

16. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

17. *Id.*

18. *See Aurora Credit Servs.,* 970 P.2d at 1282.

19. *See, e.g., Holmes Dev., LLC v. Cook,* 2002 UT 38, ¶ 31, 48 P.3d 895 (holding that "[a] plaintiff cannot amend the complaint ... in a memorandum in opposition to a motion to dismiss ... because such amendment fails to satisfy Utah's pleading requirements" (citations omitted)).

20. *See Aurora Credit Servs.,* 970 P.2d at 1282.

bad faith, or unreasonable neglect."[21] In our own review of the record, we have found no evidence that denying leave on these grounds would have been appropriate. Second, and more importantly, it is unclear that Mr. Hudgens was even required to seek leave to amend prior to filing his motion. Under rule 15(a), Mr. Hudgens was entitled to "amend his pleading once as a matter of course at any time before a responsive pleading [was] served."[22] A motion to dismiss is not a responsive pleading.[23] Thus, no action by Prosper had cut off Mr. Hudgens's right to amend as a matter of course. Accordingly, on remand, the district court is instructed to grant Mr. Hudgens leave to amend his initial complaint.

¶ 25 Finally, we pause to note the somewhat unique timing of the events in this case. In February 2009, we issued an opinion in *Helf v. Chevron, U.S.A., Inc.*[24] In that case, we addressed in some detail the intentional injury exception to the exclusivity provision of the Workers Compensation Act.[25] The issues addressed in *Helf* are of crucial importance to many of Mr. Hudgens's claims.[26] But because *Helf* was issued after the district court dismissed Mr. Hudgens's complaint, his substantive claims were evaluated without the benefit of our most recent consideration of these issues. Mr. Hudgens points out that we have the ability to independently evaluate the legal sufficiency of the claims he set forth in his initial complaint and to consider *Helf* in doing so.

¶ 26 We choose not to reach the merits of Mr. Hudgens's claims because of the posture of this case. Specifically, the briefing before this court has focused on the merits of two different complaints and on various reasons why both of those complaints either were or were not sufficient. Thus, the status of the law since *Helf* was decided has been presented to us in the context of this case's unique procedural background. In these circumstances, we conclude that, if the legal sufficiency of the complaint is challenged again on remand, examination of that complaint will best be accomplished by the district court. On remand, the parties will be able to focus their attention solely on the meritoriousness of the claims in light of the facts the parties are able to prove, instead of on how the claims relate to the district court judge's exercise of discretion. We are confident that, on remand, the district court's treatment of Mr. Hudgens's claims will appropriately account for our holding in *Helf* and any other developments in the relevant law.

## CONCLUSION

¶ 27 Because we determine that the district court exceeded the bounds of its discretion, we reverse the district court's order denying Mr. Hudgens's motion for leave to amend and remand for further proceedings. We also conclude that Mr. Hudgens's proposed amended complaint should be permitted by the district court, and we instruct the district court accordingly.

¶ 28 Chief Justice DURHAM, Justice PARRISH, Justice NEHRING, and Judge PEULER concur in Associate Chief Justice DURRANT's opinion.

¶ 29 District Judge SANDRA N. PEULER sat.

21. *Swan Creek Vill. Homeowners Ass'n,* 2006 UT 22, ¶ 22, 134 P.3d 1122.

22. Utah R. Civ. P. 15(a).

23. *See Heritage Bank & Trust v. Landon,* 770 P.2d 1009, 1010 (Utah Ct.App.1989).

24. 2009 UT 11, 203 P.3d 962.

25. *See id.* ¶¶ 16–24.

26. For instance, the district court's conclusions about whether Prosper intended to injure Hudgens were based on the fact that the purpose of the waterboarding was to motivate members of Prosper's sales teams. But in *Helf,* we "caution[ed] courts to maintain the distinction between motive and the legal concept of intent." *Id.* ¶ 33.